UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| ADOLFO YBARRA, JR., | ) | |
| Institutional ID No. 118322 | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. |
| | ) | 5:14-CV-164-BG |
| LUBBOCK POLICE DEPT. | ) | ECF |
| OFFICER #1 , *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

Proceeding *pro se* and *in forma pauperis*, Plaintiff Adolfo Ybarra, Jr. filed this action pursuant to 42 U.S.C. § 1983 alleging violations of his constitutional rights during his arrest at his home on November 7, 2012.  Ybarra claims that the Defendants falsely arrested him and used excessive force during the arrest.  He seeks compensatory and punitive damages as well as declaratory relief.

## I.   Procedural History

Ybarra filed his Complaint on September 29, 2014.  He named as Defendants Lubbock Police Department Officers Justin Criner and Joel Goolsby, who arrested Ybarra on November 7, 2012.[1] The United States District Court issued a questionnaire to clarify the claims in Ybarra's Complaint, which he returned on December 22, 2014.  Thereafter, the District Court transferred this case to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1) for further

---

[1] Ybarra's original Complaint listed two defendants, which he called "unknown" Lubbock Police officers.  He filed a document entitled a "supplemental complaint" on May 6, 2015, in which he reiterated the claims in his Complaint and also specifically named the Defendants.

proceedings.  The undersigned thereafter reviewed authenticated records from TDCJ and conducted

a preliminary screening on June 25, 2015, as directed by 28 U.S.C. § 1915(e)(2) and pursuant to

*Spears v. McCotter*, 766 F.2d 179, 181–82 (5th Cir. 1985).  After considering Ybarra's Complaint

and Supplemental Complaint, the questionnaire, his testimony at the *Spears* hearing, authenticated

records provided by the TDCJ, and applicable law, the court determined that Ybarra's claims that

he was subjected to an excessive use of force and a false arrest on November 7, 2012, survived

preliminary screening.

The court thereafter entered an order directing service as to the Defendants on October 21,

2015.  Defendant Justin Criner filed an Original Answer on November 18, 2015 (ECF No. 32), and

after being properly served, Defendant Joel Goolsby filed an Original Answer on December 22, 2015

(ECF No. 37).

Ybarra has consented to proceed before the undersigned magistrate judge, but as of this date,

no consent has been filed with the court on behalf of any of the Defendants.  In regard to the

dispositive issues in this case, the undersigned now files this Report and Recommendation.

## II.   <u>Events on November 7, 2012, and Thereafter</u>

Officers Criner and Goolsby responded to a police radio call regarding a civil disturbance at

a residence on November 7, 2012.  Ybarra and his ex-girlfriend, Misty Morales, were at the home

along with several other people.

### A.   **Ybarra's Account of the Incident**

Ybarra alleges that on November 7, 2012, officers from the Lubbock Police

Department were called to his residence regarding a domestic dispute involving his landlord and his

ex-girlfriend Misty Morales.  He claims that he greeted Officers Criner and Goolsby in his front yard,

2

and as he turned to enter his home, both officers forcefully restrained him, hog-tied him, and tased him twice. He claims that he was tased once by each officer—after he was already restrained and was no longer resisting arrest. He claims that as a result of the use of force incident, he suffered a black eye, bruising, a knee injury, and psychological damage. He testified at the *Spears* hearing that he requested medical treatment at Lubbock County Detention Center for the physical injuries. He claims that strained personal relationships and property loss caused his psychological injuries, which he alleges were caused by the arrest.

Ybarra also claims that he was falsely arrested on November 7, 2012, on the charges of resisting arrest, assault on a peace officer, domestic assault and assault against others, and unlawful restraint. He alleges that a grand jury subsequently dismissed all of the charges against him. At the *Spears* hearing, Ybarra denied reports that Misty Morales—his ex-girlfriend who was in the house at the time of the incident—verbalized the need for assistance from the Defendants. He claims that he cooperated with the officers and claims that he did not strike Officer Criner with the front door.

### B.   Authenticated Records

Officer Goolsby stated in a police report from the November 7, 2012, incident that when he arrived at the residence, there was a vehicle running in the driveway. As he knocked on the door of the residence, he could hear someone yelling inside; Officer Criner then arrived at the doorstep. Officer Goolsby reported that Ybarra answered the door, but kept it partially closed, standing in the doorway to block it. Officer Goolsby claims that as Ybarra was yelling at the officers, he observed Misty Morales silently mouthing for help from within the residence. Reporting that they were concerned for Misty Morales's safety, the officers requested that Ybarra step outside

3

the residence.  When he refused, Officer Criner reported that he reached at Ybarra through the doorway and grabbed his shirt in an attempt to get him outside.  Ybarra reportedly shut the door on Officer Criner's arm.  The officers then reported forcing the door open and wrestling Ybarra to the ground, but he continued to resist.  Officer Criner then tased Ybarra in the back before handcuffing him.  Officer Goolsby reported that he observed marks on Officer Criner's arm from the incident; Officer Criner's arm was photographed at the scene.  Ybarra was arrested on the following charges as a result of the incident: assault on a public servant; assault on a family or household member; resisting arrest, search, or transport; and unlawful restraint.  The authenticated records provided by the City of Lubbock and Lubbock County do not indicate whether Ybarra was indicted on those charges.

III.   **Discussion**

    A.   **Preliminary Screening Standard**

       A court must dismiss a complaint filed *in forma pauperis* by a prisoner if the court determines that the complaint is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915(e)(2)(B) (2015).  A frivolous complaint lacks any arguable basis, either in fact or in law, for the wrong alleged.  *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  A complaint lacking an arguable basis in fact rests upon clearly baseless factual contentions, while a complaint lacking an arguable basis in law rests upon indisputably meritless legal theories.  *See id.* at 327; *Geiger v. Jowers*, 404 F.3d 371, 373 (5th Cir. 2005).  In reaching a frivolous determination, the court may consider reliable evidence such as the plaintiff's allegations, sworn testimony obtained at a *Spears* hearing, and authenticated prison records.  *See Wilson v. Barrientos*, 926 F.2d 480, 483–84 (5th Cir. 1991); *see*

4

*also Berry v. Brady*, 192 F.3d 504, 507 (5th Cir. 1999) (noting responses given to a questionnaire are incorporated into the plaintiff's pleadings).

    **B.**    **Excessive Use of Force**

        To establish a constitutional violation for excessive use of force, a plaintiff must establish "(1) injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly [objectively] unreasonable." *Collier v. Montgomery*, 569 F.3d 214, 218 (5th Cir. 2009); *Ikerd v. Blair*, 101 F.3d 430, 433–34 (5th Cir. 1996).  Where the degree of force the police officer uses is objectively unreasonable under the circumstances, a plaintiff generally has a cognizable claim for his injury.  *Bush v. Strain*, 513 F.3d 492, 501 (5th Cir. 2008).  The determination of whether the force was reasonable depends on the facts and circumstances of the case, and when considering reasonableness, a court must look to "whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396 (1989).

        Here, Ybarra claims that he suffered a black eye, bruising, a knee injury, and psychological damage.  He claims that these injuries were the result of Officers Criner and Goolsby hog-tying him and tasing him twice after he had stopped resisting arrest.  In their Original Answers, the officers admit that they tased Ybarra but they allege that the force was reasonable under the circumstances.  The reports written by Officers Criner and Goolsby, which are contained in the authenticated records, state that Ybarra continued to resist arrest and was then tased.  The reports state that Ybarra suffered a scratch on his cheek as a result of the incident.  Because there are disputed issues of material fact relevant to whether the force used by Officers Criner and Goolsby

5

was excessive, the case should proceed at this stage.  *See Lampkin v. City of Nacogdoches*, 7 F.3d

430, 435–36 (5th Cir. 1993) ("Whether [the defendants] had an objectively reasonable basis [for

their conduct] cannot be sorted out without settling on a coherent view of what happened in the first

place.").  In other words, Ybarra has stated a Fourth Amendment violation sufficient to withstand

screening under 28 U.S.C. §§ 1915(e)(2) and 1915A.

### C.    False Arrest

To ultimately prevail on a § 1983 claim for false arrest, a plaintiff must show that the

arresting officer did not have probable cause to arrest him.  *Haggerty v. Tex. S. Univ.*, 391 F.3d 653,

655 (5th Cir. 2004) (citing *Brown v. Lyford*, 243 F.3d 185, 189 (5th Cir. 2001)).  "Probable cause

exists 'when the totality of the facts and circumstances within a police officer's knowledge at the

moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed

or was committing an offense.'" *Id.* at 655–56 (quoting *Glenn v. City of Tyler*, 242 F.3d 307, 313

(5th Cir. 2001)).

In this case, Ybarra claims that he was arrested for assault on a public servant, assault

on a family or household member, evading arrest or detention, and unlawful restraint but that these

charges were eventually dismissed. Ybarra denies that Misty Morales verbalized the need for

assistance, denies hitting Officer Criner with the front door, and claims that he was cooperative with

the officers.  Officers Criner and Goolsby generally deny Ybarra's version of the events. Because

there are disputed issues of material fact related to the issue of probable cause, Ybarra's claim that

he was falsely arrested should proceed forward at this stage.  *See Lampkin*, 7 F.3d at 435–36.

### D.    Qualified Immunity

In their Original Answers, Officers Criner and Goolsby raise the defense of qualified

immunity.  After a defendant raises qualified immunity, "the plaintiff bears the burden of negating qualified immunity, but all inferences are drawn in his favor."  *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010) (internal citation omitted).  To meet this burden a plaintiff must: allege facts that show the officer's conduct amounted to a constitutional violation; and (2) "allege facts sufficient to demonstrate that no reasonable officer could have believed his actions were proper."  *Id.*  "If, upon viewing the evidence in the light most favorable to the [plaintiff], reasonable public officials could differ on the lawfulness of the defendant's actions, the defendant is entitled to qualified immunity."  *Southard v. Tex. Bd. of Criminal Justice*, 114 F.3d 539, 550 (5th Cir. 1997).  Where an officer mistakenly but reasonably concludes that probable cause exists, the officer is entitled to immunity.  *Mendenhall v. Riser*, 213 F.3d 226, 230 (5th Cir. 2000).  Overcoming a claim of qualified immunity is a significant burden: "there must not even arguably be probable cause for the . . . arrest for immunity to be lost."  *Lyford*, 243 F.3d at 190.

Here, Ybarra alleges that Officers Criner and Goolsby hog-tied him and then tased him twice, after he had stopped resisting arrest.  He also claims that he was arrested for assault on a public servant, assault on a family or household member, evading arrest or detention, and unlawful restraint but these charges were eventually dismissed.  Officers Criner and Goolsby generally deny Ybarra's account of the incident.

Because there are disputed issues of material fact relevant to Defendants' qualified immunity defense, the case should proceed forward at this stage.  *See Lampkin*, 7 F.3d at 435–36.

### E.    State Law Immunity

In their Original Answers, Officers Criner and Goolsby assert a defense of official immunity as to any claims under state law.  "Texas law of official immunity is substantially the same

as federal qualified immunity law." *Wren v. Towe*, 130 F.3d 1154, 1160 (5th Cir. 1997).  They also assert that Ybarra has failed to state a claim upon which relief may be granted under state tort law. However, there is nothing in the record to indicate that Ybarra intended to bring a state law claim for excessive use of force or false arrest.

## IV. Recommendation

For the foregoing reasons, the undersigned recommends that the United States District Court enter a scheduling order in regard to this action.

## V. Right to Object

A copy of this Report and Recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of this Report and Recommendation must file specific written objections within fourteen days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  To be specific, an objection must identify the specific finding or recommendation to which the objection is made, state the basis for the objection, and specify the place in the magistrate judge's Report and Recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

Dated:   April 5, 2016.

NANCY M. KOENIG
United States Magistrate Judge

8